UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RICHARD L. WENDT REVOCABLE LIVING TRUST,<br><br>Plaintiff,<br><br>v.<br><br>CHURCHILL & COMPANY2 LLC,<br><br>Defendant. | CASE NO. C23-5359<br><br>ORDER |

THIS MATTER is before the Court on defendant Churchill & Company2's "motion to revise interlocutory loss-allocation order of November 22, 2024," Dkt. 68.

The motion was filed 98 days after the Court entered its Order granting partial summary judgment, Dkt. 55, and 11 days before the trial in this case will commence. Churchill argues that because the Court's Order is not a final appealable order as to all claims and all parties, it is merely interlocutory, and is subject to revision at any time before judgment. Dkt. 68 at 1–2 (citing Rule 54(b) and *City of Los Angeles v. Santa Monica Baykeeper,* 254 F.3d 882, 885–86 (9th Cir. 2001) (court has inherent power to revise interlocutory orders)). Churchill argues it is therefore unconstrained by the

ORDER - 1

procedural or substantive strictures of Federal Rule of Civil Procedure 59 (altering or amending a judgment) or Rule 60 (relief from a final judgment or order). *Id*. at 2 (citing *Deimer v. Cincinnati Sub-Zero Prods.,* 990 F.2d 342, 346 (7th Cir. 1993) (prior to a judgment, "the court has broad discretion to undertake such reconsideration.")). Churchill's motion does not address Local Rule 7(h)(2).

Substantively, Churchill asserts that the Court's Order was clearly erroneous because it did not determine whether the Pelican Capital Operating Agreement was partially or fully integrated. Dkt. 68 at 2–3. It argues that if the Court had properly considered the parties' subsequent Private Placement Memorandum (PPM) and Subscription Agreement,[1] it would have correctly interpreted the Operating Agreement's paragraph 6.1(c) "Allocation of Net Loss" to read that losses were to be borne solely by the Class B Economic Interests, rather than "allocated among [*all*] Economic Interest Owners in accordance with their respective Percentage Interests," as that paragraph plainly provides. *Id*. at 3 (bracketed material added).

---

[1] Churchill's recent motion is the first time it argued or suggested that the Subscription Agreement was also part of "color" of paragraph 6.1(c) of the parties' Operating Agreement. It did not mention that document in its September 9, 2024, opposition to summary judgment, Dkt. 36, and the document does not appear in the record prior to Cydney Churchill's February 28, 2025, Supplemental Declaration, Dkt. 69-1.

In any event, the Subscription Agreement begins with a "check the box" section that allows potential investors to choose Class A or Class B. None of the document's subsequent warnings about investment requirements and the risk of loss differentiate between the classes. *Id*. Churchill has not pointed to *any* provision in the Subscription Agreement that supports its claim that Operating Agreement paragraph 6.1(c) was a scrivener's error or otherwise did not reflect the parties' intent, and there does not appear to be one. *See* Dkts. 68 and 76. It is also worth noting that Churchill apparently retained the drafter of all three documents, attorney Dan Vaughan. Dkt. 34 at 2.

1  The Trust objected to Churchill's motion, arguing persuasively that regardless of
2  its title, the motion is facially one for reconsideration and as such is egregiously untimely
3  under LCR 7(h)(2). Dkt. 70 at 3. The Court asked the Trust to respond to the motion, Dkt.
4  72, and it did, Dkt. 75.
5  The Trust asserts that Churchill already argued that the PPM informed the Court's
6  proper reading of paragraph 6.1(c)'s plain language, and that the Court's Order already
7  properly rejected Churchill's claim that the PPM demonstrated that the Operating
8  Agreement's plain language did not mean what it said. *Id*. at 5. It argues that the Order
9  was not the result of manifest error, that the motion is not based on new facts or
10 authority, and that any new arguments that were not raised in response to the underlying
11 summary judgment motion were waived. Dkt. 75 at 3–4 (collecting cases including *Pac.*
12 *Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016); *Jenkins v. Cnty. of*
13 *Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) ("Jenkins abandoned her other two
14 claims by not raising them in opposition to the County's motion for summary
15 judgment.").
16 Under this District's local rules, a motion for reconsideration must be filed within
17 14 days of the order to which it relates. Local Rules, W.D. Wash., LCR 7(h)(2). Even
18 when timely filed, motions for reconsideration are disfavored and will ordinarily be
19 denied absent a showing of (a) manifest error in the ruling, or (b) facts or legal authority
20 which could not have been brought to the Court's attention earlier with reasonable
21 diligence. LCR 7(h)(1). The term "manifest error" is "[a]n error that is plain and
22

ORDER - 3

indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Black's Law Dictionary* 622 (9th ed. 2009).

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). Mere disagreement with a previous order is an insufficient basis for reconsideration, and reconsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision. *Haw. Stevedores, Inc. v. HT & T Co.*, 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

Nothing in Rule 7(h) suggests that it applies only to final, appealable orders, and courts in this district routinely apply to it motions for reconsideration of all sorts of "interlocutory" orders. Notions of judicial economy require the Court to refrain from revisiting settled issues even before judgment. Partial summary judgments are not advisory; they are instead the law of the case.

It is of course true that because an Order granting partial summary judgment is not appealable, it, like any other Order, is theoretically subject to revision prior to judgment.

But that does not mean that the losing party on such a motion is generally free to re-litigate settled issues at any time before judgment. There was nothing tentative or provisional about the Court's Order determining as a matter of law that Churchill breached the parties' Operating Agreement in three material ways. A motion seeking to point out a manifest error, or truly new evidence or authority, is a motion for reconsideration under the Local Rules. There is no authority for a motion seeking to undo a summary judgment by raising new arguments, or revisiting old ones, on the eve of trial. Churchill's motion is untimely. It is also unavailing on the merits.

As the Trust argues, whether the Operating Agreement is fully integrated or not, Washington law does not permit one to flatly contradict the plain language of a written agreement. Dkt. 75 at 5 (citing *Sherman v. Lunsford*, 44 Wn. App. 858, 862 (1986) ("Extrinsic evidence of terms not contained in a partially integrated writing is not normally admitted when such terms contradict or are inconsistent with terms in the writing"), and *Denny's Restaurants, Inc. v. Sec. Union Title Ins. Co.*, 71 Wn. App. 194, 202 (1993) ("[I]f the written contract is not the complete expression of the parties' agreed-upon terms, additional terms may be proved if they do not contradict the written terms.")).

Finally, and in any event, the Trust correctly points out that extrinsic evidence upon which Churchill relies does not support its contention that paragraph 6.1(c) is inconsistent with the parties' intent, or that reading it as requiring all economic interests to share in net losses is inconsistent with the other terms in the Operating Agreement or

1    with any other writings.[2] The Trust persuasively argues that "there would be no need to
2    state that Class A interest holders would 'be entitled to a priority return of capital upon
3    liquidation' in Section 3.1(a) of the Operating Agreement if, as Churchill contends,
4    Section 6.1(c) meant that losses were allocated first (or only) to the Class B interest
5    holders." Dkt. 75 at 11.

6    Churchill's motion is untimely and ultimately unpersuasive. The Court will not
7    reconsider or revise its summary judgment order. Churchill's motion for revision, Dkt.
8    68, is **DENIED**.

9    \* \* \*

10    Churchill's other attempt to avoid the effect of the Court's Order also remains
11    pending. Churchill's Trial Brief asserted equitable estoppel and unclean hands as
12    affirmative defenses to the Trust's claim for damages as the result of Churchill's material
13    contract breaches. Dkt. 63. At the pretrial conference, the Court sought supplemental
14    briefing on this issue. Dkt. 73 at 3–4.

15    Churchill's equitable affirmative defenses were listed in its answer, Dkt. 9 at 8,
16    but they were not asserted or discussed in its response, Dkt. 36, to the Trust's motion for
17    partial summary judgment, Dkt. 32. Churchill asserts that the Court's summary judgment
18    Order did not address its affirmative defenses, because the Trust did not seek summary
19    judgment on them Dkt. 66 at 3. It argues that it is therefore free to assert at trial its claim
20    that the Trust is equitably estopped from recovering damages because "a party should be

---

[2] The PPM expressly provides that in the event of inconsistency, the Operating Agreement, not the PPM, controls. Dkt. 34-2 at 45.

held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied thereon." Dkt. 66 at 3–4.

The Trust argues, again persuasively, that these are defenses to *liability* for breach of contract, not to *damages* in the face of an Order determining that the contract was materially breached. Dkt. 65 at 3, 5–6 (citing *Duarte Nursery, Inc. v. United States Army Corps of Engineers*, No. 2:13-cv-02095-KJM-DB, 2017 WL 3453206 (E.D. Cal., Aug. 11, 2017), and *Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1353 (Fed. Cir. 1999) (defendant's estoppel affirmative defense was waived when defendant failed to argue it in opposition to motion for partial summary judgment as to liability, the court observing that "an affirmative defense must be raised in response to a summary judgment motion, or it is waived")).

The Court agrees. The time for asserting equitable estoppel as an affirmative defense to the claim that Churchill's conduct breached the parties' contract was in response to Churchill's summary judgment motion on that issue. Equitable estoppel is a defense to a breach of contract claim, not to the award of damages in the face of an established breach. Arguments that are not asserted in response to a motion for summary judgment are waived. As is the case with Churchill's late-asserted contract interpretation arguments, discussed above, its equitable affirmative defenses to the Trust's breach of contract claim come too late.

Next week's bench trial will evaluate and adjudicate the damages resulting from the established breaches.

ORDER - 7

**IT IS SO ORDERED**.

Dated this 7th day of March, 2025.

_____
BENJAMIN H. SETTLE
United States District Judge